case this morning for argument which is Sylvester Morfaw versus Merrick Garland and I gather that both counsel are by video for this one yes okay all right so when counsel for the petitioner is ready to proceed we'll be happy to hear from you please the court counsel I represent the petitioner Sylvester Morfaw who's from Cameroon and fled Cameroon based on persecution and harm to himself and he is from the southwest Boya region which is an anglophone region where currently their country conditions show that villages have been burned over 50,000 people are in hiding children have been killed what is not in dispute in this case and is ubiquitous throughout the record is the fact that mr. Morfaw was arrested whether it was for 35 days which he consistently said in his testimony before the IJ two different IJs one did the direct and crossed another one did the redirect and who was the one who made the decision and that he was a member and active with SDNC the whole case throughout the credible fear throughout the Customs and Border Patrol interview is all about his activities and his arrest due to his anglophone status in the southern Cameroon's National Council which is not a party not a political party it's a movement in fact it's outlawed and it's illegal in Cameroon even though it is a peaceful group that wants secession for the southwest from which he is and the it is also not in dispute here that he was kept in a cell with about 40 other detainees and beaten around 18 times with batons cables boots and other instruments it is not in dispute that his wife was also had to flee and go into hiding and was threatened and a fire was set on part of their home so the harm and the persecution here is not in dispute what is in dispute is whether or not the inconsistencies with the credible fear interview I mean excuse me the Customs and Border Patrol interview the Customs and Border Patrol is the very first interview which they have when they cross the country by an officer and the reason that the Customs and Border Patrol people do not ask typically asylum questions but more how they got here and when they left and things like that is because they are not trained to be asylum officers they are not trained to know what to ask and what not to ask what is here is that every time he was questioned by the asylum officer and there's repeated quotes which we've included in our brief that's to show that he did not understand the kind of English it was spoken so pigeon is not really a language it's a dialect and it's different in different African countries and the pigeon that he spoke the Customs and Border Patrol officer he said could not understand and had to keep going and asking other people his responses are typically no and yes and the officer at Customs and Border Patrol said he said September 15 he was released and he was arrested August 5th so that would be 40 days as opposed to 35 days which he's consistently said August 5th and that he was released September 10th his wife and the judge makes a lot about this is his wife whose testimony is otherwise completely consistent with everything has said says that he was released the night which is one day before and that's because that was the day that the bribe was paid of 50,000 and that was accepted so that he could be released which he was actually released till the next day well can I just do you bring up that point I mean the issue with your clients credibility at the hearing though was that it was the switch from I can't remember from 2 a.m. to 2 p.m. or vice versa right but he's confronted with the fact that if it's the again I wish I could remember which was which but you know basically he's forced to say I made a mistake because the timing just is not lining up with the rest of his story and so it seemed to me totally apart from the the Customs and Border Patrol person that might be one area where the IJ could rightly say hmm you're switching your story because you were confronted with a fact that doesn't quite line up maybe that's reason for me to doubt you and then just started to make this compound but then just with the losing of the passport there was again at the hearing itself put aside whatever he said to the Customs and Border Patrol person you know he kind of had a story that was all over the map so those are the two potential inconsistencies that I saw at the hearing itself that gave me pause and I'd love to hear whatever you have to say about both so Judge Watford I would say that on the passport issue with Customs and Border Patrol he was asked specifically two questions it appears one was where is his passport now he responded I was attacked in the passport now and he said I lost it in the bush that was all then later it went to judge he said well actually what happened was well I stopped you there because this is just I'll tell you what gave me pause he's asked what happened your passport he says I lost it at a hotel okay that's his first out-of-the-box answer and then he's not even asked he's not even confronted yet with his prior inconsistent statement I think the government lawyer said well do you remember talking to the Customs and Border Patrol and that's when he said oh well actually you know there was a thing in the jungle and my passport flew away and that's when things got a little bit convoluted to my read so that's what I was hoping you could respond to yes so he does say he does explain and and that could be an addition so he's not saying that no he didn't lose the passport in the jungle he's saying he lost it someone there was a large group of people found it brought it to the hotel he brought it to him he had it in the and he moved hotel but then he tried to get it back and he lost his bag and he couldn't get it and and he was a little convoluted about that the question is whether the two couldn't have happened or does does the fact that one happened mean that the other didn't happen and again he is speaking in pigeon before the judge and before the asylum officer he was not given those safeguards not even given basic safeguards at all wasn't we read the statements or any of that stuff at the Customs and Border Patrol your side I'm willing to grant you that maybe that we can't view the customs customs and Border Patrol interview as reliable as a reliable indicator of what he said so I'm granting you that what I'm talking about is what happened at the hearing and I don't think you can say that he was somehow deprived of an adequate interpreter there he had an interpreter in his native language or the language he's most comfortable in and that's when he gives at least in the IJ's view to potentially inconsistent accounts of what happened to his passport now I grant you that yes both of those things could have happened but the sequence in which he presents them at the hearing you know it's kind of it's a little bit odd I don't know if you would grant that but that's how I read it I would agree that it it is it is it is a little odd it's not something I haven't heard before that you know that you know they've been traveling for a month this is in this interview before the judge I think was a year or two years after the hearing maybe doesn't recollect maybe he was traumatized I I agree that he was a bit confused when he talked before the judge he he you know he he did say it all before the government even confronted him with what the Customs and you know maybe the translation wasn't correct but he says he goes it goes and then someone brought it to him and that did create a lot of confusion for the judge I agree and the judge relied heavily on that and then the the other thing that that you asked me about your honor that you had a concern about was the the 2 p.m. or the 2 a.m. well I'm not sure in Cameroon they a person with the ninth grade who doesn't whose language is technically is the language is English the pigeon is the dialect would it really makes a huge difference but there he got he said I made a mistake he said repeatedly I made a mistake it's the difference between being released in the middle of the day versus the middle of the night it just seems like a hard how would you not remember which of those two it was right I could see if it was like 2 p.m. versus 4 p.m. yeah sure that's easy but 2 a.m. versus 2 p.m. there's a big difference there and especially if it's a an event as significant as the one that he's describing where he's about to be sent to some prison where you know a lot of people don't ever they're never seen again and he's able to bribe his way out and he's released so it's you know like your your life has been saved and you don't remember whether it was the middle of the night versus the middle of the afternoon I would suggest that he wasn't sure exactly when he was released because he may not have been well he may not have really realized when he was released because immediately he was taken to his aunts and he had been there for over a month at that point and had been beaten numerous times so maybe that wasn't really clearly his focus of you know what what time of day was it or when was it or you know for you and I certainly we would know if we were released by who knows if he had a watch if he even knew what the time was so that may not have been something that was on his radar that he may have even thought about okay well I consumed almost your entire argument do you have other points you want to make before we hear from the government um no I you're on I'll reserve the rest for rebuttal okay very good let's hear from counsel for the Attorney General good morning your honors may it please the court I'm Ashley Arthur on behalf of the Attorney General of the United States substantial evidence supports agency's determination a petitioner lacks credibility and felt to meet his burden to establish eligibility I have here a long list of petitioners testimonial inconsistencies and I could go on for by Cameroonian police is released can we just help hang on are you gonna rely on the Customs and Border Patrol interview as is giving rise to inconsistencies because if you are I kind of have a problem just with that from the get-go so can you tell just tell me are you gonna set that aside or are you relying heavily as the as the IJ did on that initial interview I am NOT relying on the CBP interview I can list many inconsistencies that did not rely on the CBP interview okay so for example his wife's affidavit states it's the night that he was released and he testified it to being impotent as for what exactly and what stops up so what difference does that make and particularly since at least one of the versions is 2 a.m. as I understood it she's aware of paying the bribe and then he gets released a short time later and if it was a 2 a.m. that's seems to be entirely consistent not inconsistent so so and and you know we've said date discrepancies okay does it matter or not and I have I don't understand what the difference would be between the 9th and the 10th particularly if the second day is is 2 a.m. your honor the time goes to a very significant detail of his alleged harm and the difference between night and day is stop stop what you said and what I asked you about was the alleged discrepancy between the wife's testimony about the 9th and his testimony about the 10th we'll get to the time of day but it seems to me that's a discrepancy that strikes me as utterly immaterial unless you can tell me why it makes a difference yes your honor it matters because the totality everything considered all these inconsistencies together which the agency was required to consider the totality in isolation so so your response to me says let's look at the other things so let's look at the other things that by itself doesn't seem to stand for very much okay so what next should we look at next we should look at his testimony as to time so there is discrepancy discrepancies between the date there's discrepancies of the time he first testified it was well we just talked about dates so don't talk to me about date unless you really have something more to say about that now we're on time of day and I do understand the difference between 2 a.m. and 2 p.m. but I look at his testimony at one point the same I guess I need to find it the same place where he talks about I was mistaken he then refers to afternoon and then not afternoon and 2 p.m. do we know what his understanding of afternoon is well he presented a pidgin English has provided a pidgin English interpreter for this hearing and he didn't bring up the 2 p.m. time until DHS confronted him with his declaration with states he was released this time that evening and Alice said and he says it was 2 in the afternoon 2 p.m. well this is just after he had answered so a question so around 2 a.m. you went to Dola on September 10th his page 184 in the record your honor this is when he's confronted with this declaration and he says oh it was 2 p.m. and the declaration is apparently incorrect even though it's it's signed by him and I'd like to know also the declaration was written by him apparently without the assistance of an interpreter and standard English and he swore to its truth and so we have three potential different times here and they were never pinned down or clarified and then as for his passport he lost it twice for three different reasons he also testified inconsistently as to the nature of its political activities and this is a finding of the board actually deemed waived below so this aspect of calls errors on part of the CBP agent or asylum officer the agency reasonably concluded were inconsistency is on part of petitioner petitioner states in our opening brief that the CBP interview must be unreliable because it states that he applied for a visa lottery but this is inaccurate somehow however his application at page 331 through 337 of the record he submitted his visa application and there he does state he applied for a visa lottery also there's all these phone numbers and dates of birth of various relatives that are reflected consistently throughout the asylum appliquee and CBP interview and tedious details you told us you weren't going to rely upon the interview by the Customs and Border Patrol is that what you're talking about now I'm also talking about his asylum applications and his interview with the asylum officer and his opening brief where he's he has inconsistencies even as opening brief stating that he didn't apply for a visa lottery or somehow that's wrong his visa application does show that he did apologize but but for us you're freezing sometimes so we're not hearing parts of what you said and I just missed what you just said so if you could hit that again please yes um so I was detailed in the asylum application his visa application and his asylum officer credible fear interview this the small tedious information such as states of birth of relatives and telephone numbers contact information he doesn't contest any of that's wrong he just contests things that are inconvenient to his the SCNC is it's not political in each and on his visa application he states that he's not a part of any social professional or charitable group and this visa application predates any of the alleged harm and even disregarding the visa application there there's also support that he has some confidence and the English language because he testified to his travels to the US or he I quote met a white woman who spoke English who explained to him how to travel to his next destination and then he reiterated that this English-speaking woman told him how to catch a taxi to a bus station and it's not required that so so he was provided in his asylum interview and and his merits hearings counsel and pigeon English interpreter plus his declaration apparently was written without the assistance of an interpreter or in standard English and so this I the government believes a substantial evidence that supports adverse credibility finding because he's what's found not credible by the way petitioner does state that but his claims are not dispute that he was detained but he's a member of SCNC but because he has found not credible those things are in dispute we don't know if we can take these statements as true his his letter evidence and his witness did not attest to his membership to SCNC I did not attest to his activities within this group he claims to be a agency gave wide latitude that Congress gave rather wide latitude today agency to to a salary and moving on to cap protection and my final minute you know aside independent of his discreditable discredited testimony he did not establish his burden that he has a particular risk and even in cases where credibility is not at issue incredible it's not enough to automatically out here the agency recently concluded that he did not establish his eligibility and if there are no further questions I will briefly conclude this court should deny the petition review because the record does not compel the conclusion petitioner credibly and that has high burden of establishing eligibility for cap protection thank you for inviting me here today ok thank you very much for your argument we could put two minutes on the clock for yes we're having all right all right sorry I'm so you're on I'm glad to hear that the government has said that they're not going to rely on the CD inconsistencies that's the majority of the case basically as for SCNC I would disagree with what counsel said because throughout his CDP his asylum his court he repeatedly says that he was arrested because of being they ask him who tortured you and why on pay our 303 he says the military because they accuse me of being an SCNC member so he repeatedly talks about SCNC and about being that you know part of that group the misunderstanding you know does he really understand that that's a political group or is his activities that are political he did present a card an SCNC card from 2014 the only reason the judge did not include that card is because his name Sylvester it was a time when the L was meant so the judge do the card I mean it's in the AR record but he did not consider it which seems to me incredulous that it would just be dismissed he also had other witnesses who testified again because that was submitted late that was not considered the fact that he had mistakes on dates of birth that actually lends to his credibility because it shows that even that was not important to him dates of you know when people are born and I in dates are not what they are to Americans and an asylum dates is very important so you know with as low education as he had is a construction work and primary education maybe he doesn't remember the dates of birth of his brothers and sisters his brother testified by video he did have an attorney when he wrote his declaration and I would thank the court and ask the court to strike the from being considered and remanded case to the Board of Immigration Appeals for consideration on the asylum okay thank you your honors thank you very much the case just argued is submitted and we are adjourned for the day
judges: PAEZ, CLIFTON, WATFORD